UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID JOHN BECK, *Conservator of the Estate of Hector R. Guerra*, and HECTOR MANUEL GUERRA SICAN, *Conservator of the Person of Hector R. Guerra*,
    Plaintiffs,

v.

RAYCO MANUFACTURING, INC.,
    Defendant.

No. 3:14-cv-00327 (JAM)

**RULING GRANTING SUMMARY JUDGMENT**

In 2011, plaintiff Hector R. Guerra was seriously injured during an accident involving a tree stump cutter.[1] Several years later, in 2014, plaintiff initiated this action against the manufacturer of the tree stump cutter, defendant Rayco Manufacturing, Inc., under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m *et seq.* Defendant has filed a motion for summary judgment, arguing that plaintiff's product liability claims are time-barred because this lawsuit was filed more than ten years after defendant last parted with possession or control of the tree stump cutter. For the reasons set forth below, I conclude that plaintiff's product liability claims are untimely and therefore grant defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff was a long-time employee of Shady Tree, Inc. ("Shady Tree"), a Connecticut-based tree services company. On March 18, 2011, plaintiff and other Shady Tree workers went to a residence in Greenwich, Connecticut to remove five dead sugar maple trees. While at the

---

[1] This lawsuit has been filed by the conservators of the estate and person of Hector R. Guerra. For the sake of simplicity, I refer to Hector R. Guerra as "plaintiff" in this opinion.

1

property, plaintiff and other workers used equipment owned by Shady Tree to cut down and grind the trees. Among the pieces of equipment used by the Shady Tree workers that day was an RG50 stump cutter manufactured by defendant.

At some point during the day, a terrible accident unfolded. Plaintiff became "caught in [the] stump [cutter] machine." Doc. #42-4 at 17. According to some witnesses, plaintiff's "right arm was torn off" by the stump cutter while his left arm and left leg were both broken. *Ibid.* Since this accident, plaintiff has been unable to work and so he has received—and continues to receive—workers' compensation benefits.

Almost three years after the accident, on March 13, 2014, plaintiff filed this product liability lawsuit against defendant, the manufacturer of the RG50 stump cutter. Defendant has now moved for summary judgment on the ground that it last parted with possession and control of the stump cutter at issue more than 12 years before this lawsuit was filed, and that therefore plaintiff's claims against it are barred by the applicable statute of repose. *See* Conn. Gen. Stat. § 52-577a(a). In order to resolve this issue, it is necessary to evaluate the evidence relating to the history of the specific stump cutter that was used the day of the accident.

Defendant contends that the stump cutter used that horrific day bore a serial number of RG5000420201, and defendant introduces the affidavit of its vice president, J.R. Bowling, to support this assertion. In his affidavit, Bowling states that in August 2011 he personally inspected the stump cutter that was involved in the accident, and that he "observed and documented that the stump cutter has the serial number RG5000420201." Doc. #36-1 at 1. Defendant further introduces a packing slip (created and maintained in the ordinary course of regular business activities) indicating that the stump cutter bearing that serial number was shipped from defendant to RPS Supply, Inc., an independent dealer in Stamford, Connecticut on

May 24, 2001. *Id.* at 2–3, 5–6. Defendant's claim that it sold the stump cutter in 2001 is corroborated by an affidavit from one of the owners of RPS Supply, Inc. Doc. #36-3 at 1–2. Bowling also states that his review of defendant's business records indicates that defendant has "never serviced or worked on the stump cutter after shipping it and never entered into any service contracts with any person or entity for it." Doc. #36-1 at 3.

In response, plaintiff argues that there is some doubt regarding the serial number of the stump cutter. He points to a report about the incident prepared by the Occupational Safety and Health Administration ("OSHA") in August 2011 (several months after the incident), which identifies the stump cutter at issue by a slightly different serial number: RG500052021, rather than RG500042021. Doc. #42-4 at 24. Defendant concedes that the OSHA report refers once to a slightly different serial number, but notes that at least four times elsewhere in the OSHA report, the stump cutter is identified—consistent with the Bowling affidavit—as bearing serial number RG5000420201. Doc. #42-4 at 33, 36, 39, 42.

Defendant also contends that any dispute about which of the serial numbers is correct is of no consequence to its statute of repose defense. It introduces a "Sales Order" (created and maintained in the ordinary course of regular business activities) for the RG50 stump cutter with the slightly different serial number RG5000520201, and this document indicates that the stump cutter bearing this serial number was shipped more than 12 years before the filing of this case to a purchaser in Wisconsin on July 2, 2001. Doc. #46-1 at 1. Furthermore, Bowling states—in another affidavit—that, based on his review of defendant's business records, defendant has "never serviced or worked on the RG 50 model stump cutter bearing serial number RG5000520201 after shipping it in July 2001 and never entered into any service contracts with

3

any person or entity for it." Doc. #46 at 3.[2]

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Summary judgment is an appropriate method for determining whether an action is barred by the applicable statute of repose. *See, e.g.*, *Baxter v. Sturm, Ruger & Co. Inc.*, 32 F.3d 48, 48–

---

[2] The evidence concerning the history of the stump cutter bearing serial number RG5000520201—both the "Sales Order" and the second Bowling affidavit—was submitted with defendant's reply brief rather than with its moving papers. Although this practice is generally not to be encouraged, it was perfectly appropriate under the circumstances. Plaintiff's argument regarding another possible serial number was advanced for the first time in response to the summary judgment motion, and so the reply brief was defendant's first opportunity to address it. It is well established that "'reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party.'" *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (quoting *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds, as amended (Sept. 23, 1992)*, 967 F.2d 742 (2d Cir. 1992)). Moreover, plaintiff has "not move[d] for leave to file a sur-reply to respond to [defendant's] evidence," nor has he "claim[ed] that [he] has any contrary evidence to introduce even if [he] were given an opportunity to proffer it." *See*

49 (2d Cir. 1994) (addressing statute of repose defense at summary judgment stage). As the Second Circuit has recognized, a defense that a claim is time-barred "lends itself 'to proof required by Rule 56 and therefore [may be] asserted successfully' on a motion for summary judgment," provided, of course, that there are no genuine issues of fact material to the defense. *BellSouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 609 (2d Cir. 1996) (alteration in original) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2734, at 419 (1983)). Where, as here, a federal court adjudicates state law disputes pursuant to its diversity jurisdiction, it is the "'state statutes of limitations [and statutes of repose that] govern the timeliness of state law claims.'" *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (quoting *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989)).

Plaintiff brings this action under the CPLA, which "provides the exclusive remedy against a seller of a defective product." *Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 291 Conn. 224, 230, 967 A.2d 1188 (2009); *see also* Conn. Gen. Stat. §§ 52-572m(b) (noting that the CPLA encompasses "all claims or actions brought for personal injury . . . caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product") & 52-572n(a) (noting that "product liability claim[s] . . . shall be in lieu of all other claims against product sellers . . . for harm caused by a product").

All CPLA claims are subject to the repose period set forth in Connecticut General Statutes § 52-577a(a). Under that statute, "[n]o product liability claim . . . may be brought against any party . . . later than ten years from the date that the party last parted with possession or control of the product."[3] *Ibid*; *see also Kelemen v. Rimrock Corp.*, 207 Conn. 599, 606–07,

---

*id.* at 227.

[3] There are exceptions to this rule. The ten-year statute of repose does not apply where: (1) the product

542 A.2d 720 (1988) (noting that the language of § 52-577a(a) is "unequivocal[ ]" and "unambiguous"). The intent and effect of the statute is that "sellers of products [are liable only] for a certain time period after [their] products have left their possession or control and entered the marketplace," regardless of the date of the accident. *Kelemen*, 207 Conn. at 607.

What do the words "possession" and "control" mean in this context? The statute leaves these words undefined, and so Connecticut courts have turned to "the common understanding [of the words as] expressed in the law and in dictionaries." *Id.* at 604. Relying on simple dictionary definitions, the Connecticut Supreme Court has held that, as used in § 52-577a(a), "possession" means "the act or condition of having in or taking into one's control or having at one's disposal," while "control" means "the power or authority to guide or manage: directing or restraining domination." *Id.* at 605 (internal quotation marks and citation omitted).

There might well be circumstances where the application of these definitions proves difficult. But whatever the outer limits of "possession or control" might be, it is well established that a party has parted with possession or control when it ships a product to an independent buyer, does not have any service contracts for the product, and does not engage in any post-sale servicing of the product. *Id.* at 607–08 (product seller parted with "possession or control" when it placed product in carrier's possession pursuant to shipping contract); *Daily v. New Britain Mach. Co.*, 200 Conn. 562, 564, 568–69, 512 A.2d 893 (1986) (affirming grant of summary judgment to defendant under § 52-577a(a) where evidence showed that sale occurred more than ten years before accident and, despite the existence of post-sale service contract, "defendant had no power

---

liability claim was brought by someone who was *not* entitled to workers' compensation benefits and who "can prove that the harm occurred during the useful safe life of the product"; (2) an "express written warranty [provides] that the product can be used for a period longer than ten years"; (3) the "product seller . . . intentionally misrepresents a product or fraudulently conceals information about it"; or (4) the claim "involv[es] injury, death or property damage caused by contact with or exposure to asbestos." Conn. Gen. Stat. § 52-577(c)–(e). Neither party contends that any of these exceptions are applicable in this case.

to influence what parts would be run on the machine, what molds would be employed, what hours the machine would be run, what maintenance would be performed, or who would service or operate the machine"); *Wasilewski v. Raymond Corp.*, 2011 WL 4403269, at *2–3 (D. Conn. 2011) (granting summary judgment to defendants on statute of repose grounds where, despite the existence of post-sale service contract, "no evidence [indicated] that [defendants] controlled the plaintiff's options with regard to maintenance, parts, service or staff" and no "evidence [indicated] that [defendants] had possession of the [product] any time after the initial . . . sale").

Applying this legal framework to the facts here, it is apparent that the ten-year statute of repose bars plaintiff's CPLA claims against defendant. This lawsuit against defendant was filed on March 13, 2014, and so the claim is barred if the product at issue—the tree stump cutter used by plaintiff the day of the accident—last left the possession or control of defendant more than ten years earlier, *i.e.*, before March 13, 2004. To identify when the particular tree stump cutter at issue in this case left defendant's possession and control, I look to the evidence regarding the product's serial number and to defendant's business records regarding the sale and servicing of products bearing a particular serial number. The evidentiary record here reveals perhaps some dispute regarding whether the stump cutter used the day of the accident was one of two possible serial numbers: RG5000420201 or RG5000520201.[4] But the undisputed evidence shows that *both* of these stump cutters left defendant's possession and control in 2001, well over ten years

---

[4] It seems abundantly clear to me that the single usage of serial number RG5000520201 in the OSHA report is nothing more than a typographical error in view of the fact that the OSHA report notes that the stump cutter's serial number is RG5000420201 on four other occasions. Moreover, the four mentions of serial number RG5000420201 in the OSHA report are consistent with (1) the fact that the stump cutter bearing this serial number was shipped by defendant to a dealer in Stamford, Connecticut, just a few miles from the site of the accident in Greenwich, and (2) Mr. Bowling's affidavit stating that he personally inspected the stump cutter involved in plaintiff's accident and observed that its serial number was RG5000420201. But I need not decide whether the single reference to another serial number in the OSHA report suffices to create a disputed factual issue because, as noted above, the undisputed evidence shows that defendant last parted with possession and control of *both* stump cutters—the one bearing serial number RG5000420201 *and* the one bearing serial number RG5000520201—over ten years ago.

prior to the initiation of this lawsuit. At that time, defendant sold the stump cutters to third parties. Since then, defendant has not regained possession of either stump cutter, nor has it entered into any service contracts or performed any post-sale servicing related to either stump cutter. Because there is no issue of material fact, plaintiff's product liability claims against defendant are time barred under the statute of repose set forth in § 52-577a(a).

Defendant's motion for summary judgment (Doc. #34) is GRANTED. The Clerk of Court is directed to close this case.

It is so ordered.

Dated at Bridgeport this 20th day of February 2015.

/s/ Jeffrey Alker Meyer
Jeffrey Alker Meyer
United States District Judge